GILLESPIE *v.* TAECKENS.

1. REFORMATION OF INSTRUMENTS — DEEDS—MUTUAL MISTAKE IN DESCRIPTION.

    If there was a mutual mistake in the descriptions in deeds from a common grantor whereby plaintiffs and their predecessors in title were deeded less land than was intended, and defendants and their predecessors were deeded more, plaintiffs are entitled to have the deeds reformed and the descriptions corrected.

2. SAME—EVIDENCE—SUFFICIENCY.

    In a suit to reform the descriptions in certain deeds whereby plaintiffs claim that, through a mutual mistake, they were deeded less land than was intended and defendants were deeded more, a decree in favor of plaintiffs, *held*, justified by the record.

Appeal from Genesee; Black (Edward D.), J. Submitted June 10, 1927. (Docket No. 70.) Decided July 29, 1927.

Bill by Robert J. Gillespie and others against Louis Taeckens and another to enjoin an action of ejectment, and for reformation of certain deeds. From a decree for plaintiffs, defendants appeal. Affirmed.

*George W. Cook,* for plaintiffs.

*McFarlan & Wilson,* for defendants.

SNOW, J. Plaintiffs seek to reform and correct the descriptions in a number of deeds, the record of title in and to certain lands which they claim to own in "Block 54, village of Flint," now the city of Flint, Michigan. The west half of this block was at one time owned by one Mortimer H. Putnam. It was for the

---

[1]Reformation of Instruments, 34 Cyc. pp. 917, 936, 952, 955; 23 R. C. L. 335; [2]Id., 34 Cyc. p. 986.

most part low and somewhat marshy land, although to the north, adjacent to Fifth street, the land was some 20 feet higher, more valuable, and was available for building purposes.      It was, in fact, at one time the site of a brewery and its outbuildings, an institution now almost as much out of mind as is the ancient chariot of Ormazd.

In 1907 Mr. Putnam sold this land at public auction. There was then a fence running through it in an easterly and westerly direction from Harrison street on the west to an alley on the east.      The location of this fence is in dispute, and whether or not there were in fact two fences of this character is also a matter of contest.      The plaintiffs claim there was but one, and that Dr. Ephraim D. Rice purchased all the land north of the fence, and Daniel Elston purchased the land to the south.      This was unquestionably the understanding of both Dr. Rice and Mr. Elston, and they took possession of their respective purchases, with the fence the dividing line.

But, plaintiffs further claim, because of mutual mistake of all parties concerned, the deeds misdescribed the parcels, and Elston was conveyed some 42 feet of land to the north of the fence, which land should have been contained in the Rice deed, and omitted from the other.

In 1917, the Gillespies, plaintiffs, acquired title to the land of Dr. Rice, and in 1916 the Taeckens, defendants, acquired the Elston land.      All deeds in passing title from Rice to the Gillespies contained the same description as the original deed from Putnam to Rice. The Elston deed to defendants conveyed specifically all the right, title, and interest he had in block 54. After a number of years the defendants began ejectment against plaintiffs for the 42 feet on Harrison street, north of the fence line, and plaintiffs filed this bill to reform their deeds.

The case presents no question of law, and but one of fact. If there was a mutual mistake in the descriptions in the deeds from Putnam, it must be conceded plaintiffs are entitled to reformation. The chancellor found this to be the situation and decreed accordingly. The defendants appeal.

The record satisfies us that there was but one fence across this property when Mr. Putnam sold it, and it was clearly the intent of both seller and buyers that this was the dividing line. Possession of the land north of the fence has always been in Rice and his devisees, while Elston and his devisees have occupied the land to the south. One of the old buildings has been converted into a house and stands on the disputed strip.

It is reasonably certain the defendants did not think they were buying this house, and Elston knew he was not selling it. Some difficulty was experienced by defendants and Elston in getting a description satisfactory to both, but this resulted, we believe, from the fact that Elston had been enjoying rights in Sixth and Harrison streets, which it was feared might be terminated by the city. Elston knew he owned no land north of the fence, and he so testified. Defendants must have known it too. They paid only $500 for the lot on which the house stood, which was a fair price for the lot alone. The chancellor found: "I think it was understood by them that his line went as far north as the south line of the property occupied by Gillespie." We cannot see how any other conclusion could have been reached.

That there was a mistake in the original deeds from Putnam to Rice and Elston, as well as the subsequent ones which followed them, is established by the great weight of the evidence. Mr. Putnam died before the trial, but the testimony of both Rice and Elston, original purchasers, is in accord on the subject. Oc-

cupancy of the premises alone, with the fence the dividing line, was nearly of sufficient length of time to establish ownership.    A neighbor, Mr. Foulds, who was in position to know the situation, testified to the location of the fence, the old building on the premises, and the occupancy of the land, as did Mr. Burbank who erected an apartment house for Dr. Rice on the property fronting Fifth street.    Other witnesses testified to the possession of the respective parties and the location of the fence.    Defendants produced several witnesses who likewise testified to the fence, although in many instances disputing its location as fixed by plaintiffs.    While perhaps some of the conclusions from the evidence, arrived at by counsel for defendants in their brief, are plausible and somewhat persuasive, still we have no hesitancy in agreeing with the chancellor that "the line between the two properties is the line where the monuments now stand," which represents the point where the fence originally existed when the property was first sold at auction.    That the deeds failed in correct description was clearly a mutual mistake, and plaintiffs are entitled to have them reformed.

The decree appealed from is sustained in all respects, with costs to plaintiffs.

SHARPE, C. J., and BIRD, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.